UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
FORT MYERS DIVISION

STEPHANIE CLARKE, as Personal Representative for the ESTATE OF ELROY CLARKE

Plaintiff,

v. Case No: 2:25-cv-376-SPC-KRH

BILL PRUMMELL, JR., in his Official Capacity as SHERIFF OF CHARLOTE COUNTY FLORIDA, and Chalotte County Deputies for the Charlotte County Sheriff's Office BRAD STENDER, MITCHELL PALMER, and ALEXANDER MAGOON, in their Individual Capacities;[1]

Defendants.

---

## OPINION AND ORDER

Before the Court is Defendants' motion to dismiss. (Doc. 52). Plaintiff Stephanie Clarke, as Personal Representative for the Estate of Elroy Clarke, opposes. (Doc. 58). For the below reasons, Defendants' motion is granted.

[1] The Court strikes the reference to "their Official" capacity in the case caption since the allegations in the Second Amended Complaint are against the deputies in their individual capacities only (Doc. 49 ¶¶ 29, 117, 137).

## BACKGROUND

This case arises out of the death of Elroy Clarke. Since both the Court and the parties are intimately aware of the facts, the Court will limit the background to an overview and incorporate the detailed factual background from the previous order (Doc. 46). *See Clarke v. Prummell*, No. 2:25-cv-00376-JES-DNF, 2026 WL 874145, at *3–8 (M.D. Fla. Mar. 31, 2026).[2]

On October 23, 2024, Clarke called 911 to have Troy Johnson, an individual who was working on Clarke's home, removed for "disturbing the peace." (Ex. A at 1:40–4:40). Once Deputies Brad Stender and Mitchell Palmer arrived, Clarke approached them claiming Johnson was unstable and disturbing the peace. (Ex. B at 0:55-1:00). Deputy Palmer asked Clarke if either were armed, to which Clarke confirmed they were not—although Clarke claimed to be "the weapon." (Ex. B at 1:43–1:51).

Deputies Palmer and Stender then split up to assess the situation, where Deputy Stender eventually learned of and confirmed a warrant for Clarke's

[2] The undersigned was reassigned to the case after the Honorable John E. Steele passed away. In drafting this Order, the Court reviewed Judge Steele's Order (Doc. 46), the Second Amended Complaint (Doc. 49), the body-worn cameras of Deputies Brad Stender, Mitchell Palmer, and Alexander Magoon—Exhibits B, C, and D, respectively—and the 911 call—Exhibit A. (Doc. 22; Doc. 57).

arrest for failure to appear for a trespass.[3] (Ex. B at 2:10–21:01). Once Deputy Stender told Clarke about the warrant, things went awry.

Clarke claimed he was not Elroy Clarke but was Ben Dey. (Ex. B at 20:35–21:01). Unconvinced, Deputy Stender stated he knew who Clarke was but Clarke, with a raised voice, called Deputy Stender's proof "bullshit." (*Id.* at 21:01–21:12). After a brief back and forth, Deputy Stender told Clarke he would be tased if he did not comply, but Clarke refused and said he does not take orders from anyone. (*Id.* at 21:12–22:03). Clarke continued to argue with the deputies about his identity before Deputy Stender fired his first taser cartridge at Clarke. (*Id.* at 22:03–24:10). Within a few seconds, Clarke removed the taser wires from his body, a move he repeated on the second set of taser wires Deputy Stender fired. (*Id.* at 24:11–24:19). Appearing unfazed by the taser, Clarke refused to comply. (*Id.* at 24:20–24:23).

When the taser failed, Deputy Stender used his pepper spray—ultimately hitting Clarke's eyes, which Clarke simply wiped off. (*Id.* at 24:25–24:29). Ignoring the continued demands to get on the ground, Clarke turned his back to Deputy Stender. (*Id.* at 24:35–24:37). Deputy Stender used that opportunity to try to tackle Clarke, but failed, as Clarke turned around, pushed Deputy Stender off him, and yelled "get the fuck off me. Don't touch me." (*Id.*

[3] According to Plaintiff, it was apparent that Clarke was also not in the right state of mind and experiencing a mental health crisis throughout the encounter.

at 24:39–24:41). Clarke then said that if the deputies touched him, they would "see something they didn't want to see," and that they should not touch him for "their safety and [Clarke's]." (*Id.* at 24:45–24:55). The deputies continued ordering Clarke to get on the ground and to put his hands behind his back for roughly another four minutes, but Clarke refused. (*Id.* at 24:55–29:36; Ex. C. at 26:10–29:36).

About this time, Deputy Alexander Magoon arrived at the scene. (Ex. D at 8:22; Ex. B at 29:50–29:56). Within a few seconds of getting out of his car, Deputy Magoon tased Clarke twice while yelling for him to "get on the ground." (Ex. B at 29:56–30:00; Ex. D. at 8:28–8:40). Ultimately, the deputies managed to get Clarke on the ground after Deputy Magoon's second firing of his taser. (Ex. D at 8:35–8:40).

While Clarke was on the ground, Deputy Magoon drive-stunned[4] Clarke for over 30 seconds. (*Id.* at 8:40–9:03; Doc. 49 ¶ 9). Clarke, however, was able to roll the deputies off him and stand up before Deputy Magoon briefly pushed Clarke to the ground, though Clarke quickly got up again. (Ex. B at 30:15–30:30; Ex. D. at 9:03–9:10). Deputy Stender then struck Clarke's right knee with his baton, but Clarke remained unfazed before repeating that he was Ben Dey and calling the deputies incompetent. (Ex. B at 30:36–30:50). Clark

[4] A drive stun is a technique where an energy weapon (like a taser) is pressed directly against a person's body or clothing and discharged without firing dart probes.

refused to get on the ground and Deputy Magoon threatened Clarke with lethal force. (Ex. D at 9:10–9:13). The deputies continued to demand that Clarke get on the ground, but Clarke refused and again asked them to leave, since this was a civil matter. (*Id.* at 9:13–10:45).

All the deputies said they did not want to hurt Clarke before Deputy Magoon again told Clarke to "get on the ground." (Ex. B at 32:00–32:06; Ex. C at 32:07–32:25; Ex. D at 10:50–11:10). Deputy Stender then grabbed a beanbag shotgun from a vehicle as Deputies Palmer and Magoon continued giving orders. (Ex. B at 34:15–34:18; Ex. C at 34:10–34:37). After Deputy Stender returned with the beanbag shotgun, Clarke offered to get on the ground if they provided him with water; all deputies responded that Clarke would get water after he complied with their orders. (Ex. C at 34:39–34:58; Ex. D at 14:00–14:16).

Once again, Clarke refused to get on the ground. Deputy Stender, with the beanbag shotgun in hand, told Clarke that he would get shot if he continued not to comply, but Clarke refused and claimed not to be Elroy. (Ex. B at 35:50–36:11). Deputy Stender announced "less lethal" three times before firing the first beanbag round. (*Id.* at 36:40–36:41). Clarke then yelled that he did not "know if [he] could contain it," as the deputies kept telling Clarke to get on the ground. (*Id.* at 36:42). Deputy Stender then fired the second beanbag round. (*Id.* at 36:45–36:49).

Still standing, Clarke brought his fists in front of him, and Deputy Stender fired the third beanbag round. (*Id.* at 36:52–36:53). Clarke then charged the deputies, and Deputy Magoon fired five or six rounds from his firearm. (Ex. D at 15:25–15:28). Clarke reached out towards Deputy Magoon, who stumbled backward and fired another six rounds. (*Id.* at 15:28–15:29). Clarke took a few more steps before falling to the ground, and Deputy Stender fired one round as Clarke attempted to stand up. (Ex. B at 36:57–36:58).

Clarke then lay on the ground. (*Id.* at 37:10–37:14). Deputy Stender placed Clarke in handcuffs, and backup arrived less than a minute after the first shot was fired. (*Id.* at 37:15–37:40). Deputies rendered aid, but Clarke ultimately died from his gunshot wounds. (Doc. 49 ¶ 19).

## LEGAL STANDARD

Under Federal Rule of Civil Procedure 8(a)(2), a complaint must contain a "short and plain statement of the claim showing that the pleader is entitled to relief." Fed. R. Civ. P. 8(a)(2). This obligation "requires more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007).

To survive a motion to dismiss, a complaint needs sufficient factual allegations, accepted as true, to show the claim is plausible on its face. *Caterpillar Fin. Servs. Corp. v. Venequip Mach. Sales Corp.*, 147 F.4th 1341, 1346 (11th Cir. 2025). To be facially plausible, the plaintiff must plead facts

that permit a reasonable inference that the defendant is liable for the misconduct alleged. *Id.* at 1347. Courts draw on their judicial experience and common sense to determine whether a complaint states a plausible claim. *Id.* The Court conducts a two-step process for a motion to dismiss. First, it determines what must be pled for each cause of action. *Id.* Next, the Court considers whether the well-pleaded factual allegations plausibly suggest an entitlement to relief. *Id.*

In deciding a motion to dismiss, district courts generally must limit their consideration to the pleadings and any exhibits attached to the pleadings. *Grossman v. Nationsbank, N.A.*, 225 F.3d 1228, 1231 (11th Cir. 2000). When the Court considers evidence outside the complaint, the motion to dismiss must be converted into a motion for summary judgment, unless the evidence can be considered under the incorporation-by-reference doctrine or judicial notice. *Baker v. City of Madison*, 67 F.4th 1268, 1276–77 (11th Cir. 2023) (quotations omitted).

The incorporation-by-reference doctrine permits a court to properly consider documents not referred to or attached to a complaint "if the document is[:] (1) central to the plaintiff's claims; and (2) undisputed, meaning that its authenticity is not challenged." *Johnson v. City of Atlanta*, 107 F.4th 1292, 1300 (11th Cir. 2024). The incorporation-by-reference doctrine also permits a court to consider body camera footage. *See Baker*, 67 F.4th at 1277. "[W]here

[the] video is clear and obviously contradicts the plaintiff's alleged facts, we accept the video's depiction instead of the complaint's account, and [we] view the facts in the light depicted by the video." *Baker*, 67 F.4th at 1277–78 (citation omitted). On the other hand, the Court "must construe all ambiguities in the video footage in favor of the plaintiff." *Id.* at 1277.

## DISCUSSION

Plaintiff filed a five-count Second Amended Complaint (Doc. 49) alleging: (1) Excessive Force in Violation of the Fourth Amendment against Deputy Stender and Deputy Magoon; (2) Failure to Intervene in Violation of the Fourth Amendment against Deputy Palmer; (3) Equal Protection Violation against Deputies Stender, Magoon, and Palmer; (4) *Monell* Claim for Unconstitutional Policies, Customs, Training, Supervision, and Use of Excessive Force against Sheriff Bill Prummell in his official capacity; and (5) Wrongful Death against Sheriff Prummell in his official capacity.

The Second Amended Complaint explicitly cites the deputies' body-worn camera footage but does not cite the 911 call. (Doc. 49). The 911 call (Doc. 57) was refiled with the Court, where the Defendants provided the entire recording rather than an edited portion (Doc. 54). Given Plaintiff does not challenge the authenticity of either, the Court is satisfied that it can consider the body-camera footage and 911 call in ruling on Defendants' motion to dismiss.

Defendants seek to dismiss all claims for various reasons. The Court begins with the three claims against the individual defendants, then addresses the two claims against Sheriff Prummell in his official capacity.

**A. Count I**

Count I challenges the manner of Clarke's arrest. In the Second Amended Complaint, Plaintiff alleges that Deputy Stender's use of his taser, bean bag shotgun, and pistol as well as Deputy Magoon's use of his taser, threats of lethal force, and pistol, all constitute excessive force. (Doc. 49 ¶¶ 31–115). Plaintiff appears to have abandoned any allegations that Deputy Stender's use of pepper spray, use of his baton, and attempted tackle were excessive force, so those will not be analyzed below. Both deputies argue they are entitled to qualified immunity because the facts alleged do not constitute excessive force, and, even if the force was excessive, Clarke's constitutional right was not clearly established at that time. (Doc. 52 at 11–20). The Court agrees with the deputies and finds they are entitled to qualified immunity.

To avoid repetitive analysis, the Court is persuaded by and adopts Judge Steele's previous finding that Deputies Stender and Magoon acted within the scope of their discretionary duty throughout the encounter. *See Clarke*, 2026 WL 874145, at *9–10. Therefore, the only remaining question is whether the deputies' force was excessive and whether Clarke's right was clearly established at the time of the incident.

*1. Excessive Force*

An excessive force claim arising out of an arrest is governed by the Fourth Amendment. *Graham v. Connor*, 490 U.S. 386, 394 (1989); *Settle v. Collier*, 160 F.4th 1282, 1288 (11th Cir. 2025) (citation omitted). The touchstone of the Fourth Amendment is reasonableness, measured in objective terms. *See Barnes v. Felix*, 605 U.S. 73, 79 (2025) (citing *Brigham City v. Stuart*, 547 U.S. 398, 403 (2006)). The ultimate question is "whether the force deployed was justified from 'the perspective of a reasonable officer on the scene,'" considering the individual and governmental interests at stake. *Id.* (citations omitted).

The reasonableness inquiry analyzes the "totality of the circumstances[,]" paying "careful attention to the facts and circumstances relating to the incident, as then known to the officer." *Id.* at 80; *see also Graham*, 490 U.S. at 395–97 ("An officer's evil intentions will not make a Fourth Amendment violation out of an objectively reasonable use of force; nor will an officer's good intentions make an objectively unreasonable use of force constitutional."); *Jones v. Ceinski*, 136 F.4th 1057, 1062 (11th Cir. 2025) (quoting *Mobley v. Palm Beach Cnty. Sheriff Dep't*, 783 F.3d 1347, 1354 (11th Cir. 2015)) ("We do not consider whether an officer acted in good faith or sadistically and maliciously."). The courts, however, must be careful not to analyze with 20/20 hindsight vision because deputies are often required to

make split-second judgments in tense, uncertain, and rapidly evolving circumstances. *See Plumhoff v. Rickard*, 572 U.S. 765, 775 (2014).

The Court uses a two-step process to determine whether Deputies Stender and Magoon's use of force was excessive. *Charles v. Johnson*, 18 F.4th 686, 699 (11th Cir. 2021). First, the Court determines "whether the specific kind of force is categorically unconstitutional," and if not, the Court weighs the *Graham* factors to determine whether the amount of force used was excessive. *Johnson*, 107 F.4th at 1302 (citations omitted). The following non-exhaustive factors are relevant to the Court's analyses: (1) the severity of the crime at issue; (2) whether the suspect poses an immediate threat to the safety of the officers or others; (3) whether the suspect is actively resisting arrest or attempting to flee; (4) the need for the application of force; (5) the relationship between the need and the amount of force used; (6) the extent of the injury inflicted; (7) an officer's language during the event;[5] (8) any effort made by the officer to temper or limit the amount of force; (9) the severity of the security problem at issue; (10) the threat reasonably perceived by the officer; and (11) whether the officer gave warnings and tried to control the situation.[6] *See*

[5] But "words alone [cannot] make . . . an otherwise proper[ ]" use of force "unconstitutional under the Fourth Amendment." *Jones v. Ceinski*, 136 F.4th 1057, 1062 (11th Cir. 2025) (citation omitted).

[6] The Court refers to these factors generically as the *Graham* factors, though many are from cases after *Graham*.

*Graham*, 490 U.S. at 396; *Jones*, 136 F.4th at 1062; *Jones v. Fransen*, 857 F.3d 843, 852 (11th Cir. 2017).

Given the significant overlap in facts, the Court adopts Judge Steele's finding on the first step of the analysis and limits its analysis for the second step to the new factual allegations in Count I. *See Clarke*, 2026 WL 874145, at * 14–19.

Only three specific instances require detailed discussion within the new factual allegations. First, the Court finds that Deputy Magoon's use of his taser against Clarke was not unreasonable under the totality of the circumstances because Clarke both passively—by refusing to comply with the deputies' orders—and actively—by ripping previous taser wires out and pushing Deputy Stender—resisted arrest. *See Hoyt v. Cooks*, 672 F.3d 972, 979–80 (11th Cir. 2012) (holding that officers were entitled to qualified immunity when the suspect refused to comply with officers and resisted arrest while being drive-stunned).

Second, Clarke's contingent offer to get on the ground did not render any force used excessive because by the time Clarke offered to do so, the deputies had spent approximately 14 minutes attempting to arrest Clarke and had given at least 30 commands to no avail. In light of Clarke's insistent refusal to comply, the Court finds that a reasonable officer at the scene could have concluded that Clarke did not intend to surrender. *See Crenshaw v. Lister*, 556

F.3d 1283, 1293 (11th Cir. 2009) (stating an officer could question the sincerity of the suspect's attempt to surrender when the suspect had shown no intention of surrendering throughout the encounter).

Finally, the Court finds that Plaintiff's allegation that Deputy Stender fired a single shot *after* Clarke was incapacitated on the ground is inconsistent with the body-camera footage. *Baker*, 67 F.4th at 1277–78 (stating the Court must accept the depiction of the footage where it clearly contradicts the factual allegations). Instead, the body-camera footage shows Clarke attempting to stand back up and follow through on his actions as Deputy Stender fired one round. (Ex. B at 36:57–36:58). The law does not require the deputies to wait and hope for the best in tense and dangerous situations, as here. *See Jean-Baptiste v. Gutierrez*, 627 F.3d 816, 821 (11th Cir. 2010). Rather, it allows law enforcement to make snap judgment decisions on whether a reasonable officer could conclude there was probable cause that the suspect posed a threat of serious harm to the officers, which existed here. The deputies were unable to incapacitate Clarke even after they used six types of non-lethal force over the course of 16 minutes and provided over 60 commands that Clarke refused to comply with. Paired with Clarke's charge towards the deputies with his fists up at chest level, Clarke reaching out towards Deputy Magoon after five or six rounds were fired, and Clarke's attempt to stand back up after approximately 14 rounds were fired, it is clear Deputy Stender's use of force was not excessive.

*Cf. Perez v. Suszczynski*, 809 F.3d 1213, 1219 (11th Cir. 2016) (holding the shooting of a *subdued* and *compliant* individual was excessive).

Ultimately, the calculus remains unchanged. The Mental Health Unit's availability, Charlotte County Sheriff's Office Use of Force Policy (among other statutory citations by Plaintiff), and Clarke's late offer to get on the ground are not enough to plausibly suggest any force used was excessive. The circumstances remain that Clarke passively and actively resisted arrest,[7] acted belligerently, and continued to move towards Deputy Magoon even after five or six rounds were fired. Therefore, neither Deputies Stender's nor Magoon's use of force was excessive under the circumstances.

*2. Clearly Established Right*

Even assuming Deputies Stender and Magoon violated Clarke's constitutional rights, Plaintiff must also show the constitutional right was clearly established. A right is clearly established when "controlling law gave the official 'fair warning' that his conduct violated that right." *See Jones*, 136 F.4th at 1065. Plaintiff may do this by identifying "materially similar case[s], appealing to a broader, clearly established principle that should control the novel facts at hand, or establishing that the challenged conduct so obviously violates the Constitution that prior case law is unnecessary to clarify its

[7] Plaintiff disputes that Clarke pushed Deputy Stender off him, however, the body-worn camera footage is unambiguous. (Ex. C. at 24:19–24:30).

lawlessness." *Id.* (internal quotation marks omitted); *see also Priester v. City of Riviera Beach*, 208 F.3d 919, 926 (11th Cir. 2000). Here, Plaintiff relies on all three methods.

(a) Materially Similar Cases

Plaintiff argues that five Eleventh Circuit cases provided Deputies Stender and Magoon with fair warning that their conduct violated Clarke's constitutional rights. (Doc. 58 at 8–11). Deputies Stender and Magoon, however, contend that none of the cases are materially similar to the instant facts. (Doc. 61 at 3–7). The Court agrees and addresses each case in turn.

First, Plaintiff relies on *Helm v. Rainbow City*, 989 F.3d 1265 (11th Cir. 2021), for the proposition that Magoon's prolonged drive-stuns of Clarke violated a clearly established right. *Helm*, however, is materially distinguishable. First, *Helm* involved a teenage female who was suffering from grand mal seizures and was "fully secured" and "completely restrained." *Id.* at 1274. Here, Clarke was a 40-year-old large man who was neither fully secured nor completely restrained. Second, the teenage female in *Helm* did not resist or disobey the officer, act belligerently, or yell at the officers, nor was she suspected of a crime —unlike Clarke. *Id.* at 1274–75. So *Helm* is not a materially similar case.

Second, Plaintiff cites *Fils v. City of Aventura*, 647 F.3d 1272 (11th Cir. 2011), to support the proposition that the deputies' use of a taser on a suspect

who posed no immediate threat and offered only passive resistance constitutes excessive force. Again, *Fils* is materially distinguishable. The plaintiff in *Fils* was tased without warning after putting his hands up simply because he made a comment in a private conversation that the officer did not appreciate. *Id.* at 1288–89. Further, the plaintiff in *Fils* did not disobey any orders of the officer, did not resist arrest, nor did he attempt to free himself from the officer's control once he was on the ground. *Id.* at 1289. The facts are significantly different in this lawsuit. Thus, *Fils* is not a materially similar case.

Third, Plaintiff cites *Perez*, 809 F.3d 1213, for the proposition that shooting an unarmed suspect violates clearly established Fourth Amendment law. Yet again, *Perez* is materially distinguishable. In *Perez*, the plaintiff had not committed any crime and remained compliant after being restrained on the ground with his hands behind his back. *Id.* at 1217. After an officer removed the plaintiff's gun and threw it about ten feet away, an officer shot the plaintiff twice in the back where one witness described it as "execution-style." *Id.* The facts of *Perez* are a far cry from this case, as Clarke was suspected of a crime—even if just a minor offense—refused to comply with officers' commands, actively resisted arrest, yelled at officers, and was not subdued. As such, *Perez* is not a materially similar case.

Finally, Plaintiff cites *Teel v. Lozada*, 826 F. App'x 880 (11th Cir. 2020), and *Clawson v. Rigney*, 777 F. App'x 381 (11th Cir. 2019), in support of denying

qualified immunity. These cases, however, are not "controlling law" because they are not published opinions. *See Bonilla v. Baker Concrete Const., Inc.*, 487 F.3d 1340, 1345 n.7 (11th Cir. 2007) ("Unpublished opinions are not controlling authority and are persuasive only insofar as their legal analysis warrants."). Unpublished opinions are indeed persuasive but cannot support a denial of qualified immunity since they lack any precedential value. *J.W. ex rel. Tammy Williams v. Birmingham Bd. of Educ.*, 904 F.3d 1248, 1260 n.1 (11th Cir. 2018) (citations omitted).

Without any materially similar cases, the Court next considers whether a broad, clearly established principle existed at the time of the incident.

(b) Broad, Clearly Established Principle

Next, Plaintiff argues that even without materially similar cases, "a broader principle controls: officers must de-escalate and adjust force downward when confronting a mentally unstable, unarmed, non-violent individual suspected of only a minor offense, particularly where safer alternatives (backup, communication, Mental Health Unit) are available." (Doc. 58 at 11). Under this standard, "the principle must be established with obvious clarity by the case law so that it would have been apparent to every reasonable officer that his conduct was unlawful." *See Jones*, 136 F.4th at 1066 (quoting *Terrell*

*v. Smith*, 668 F.3d 1244, 1256 (11th Cir. 2012)). The cases cited by Plaintiff do not provide such a broad, clearly established principle.

As an initial matter, Plaintiff cites *Guptill v. City of Chattanooga*, 160 F.4th 768, 779 (6th Cir. 2025), and *Teel*, 826 F. App'x 880, in support of her argument that a broad clearly established principle exists. (Doc. 58 at 11). But these cases are not controlling law in the Eleventh Circuit. *See Birmingham Bd. of Educ.*, 904 F.3d at 1260 n.1. Accordingly, neither case gave the deputies fair warning of a broad, clearly established principle.

Next, neither *Barnes v. Felix*, 605 U.S. 73, nor *Graham v. Connor*, 490 U.S. 386, fares any better. In *Barnes*, the U.S. Supreme Court rejected the Fifth Circuit's "moment of threat" inquiry in light of its prior rulings applying the "totality of circumstances." *Id.* at 80. Nowhere in *Barnes* is there any suggestion that a police officer is required to de-escalate and adjust force downward when confronting a mentally unstable, unarmed, non-violent individual. Similarly, *Graham* simply dealt with tethering excessive force claims to a reasonableness analysis rather than dealing with any mentally unstable individual. *Id.* at 395–96. As such, neither provided fair notice to the officers of the principle offered by Plaintiff.

Next, though *United States v. Brown*, 934 F.3d 1278 (11th Cir. 2019), discusses looking to use of force policies, this is still not enough to put the deputies on notice of the alleged wrongfulness of their actions. As the Eleventh

Circuit noted, simply because an officer violates a police department's policies on the use of force, it "would not by itself establish that his actions amounted to excessive force." *Id.* Further, no broad, general policy from this case relates to de-escalating force against a mentally unstable individual.

The most relevant case Plaintiff cited is *Mercado v. City of Orlando*, 407 F.3d 1152 (11th Cir. 2005). *Mercado*, however, largely stands for the broad, clearly established principle that using deadly force in a situation requiring less-than-lethal force, is inappropriate, a principle that is inapplicable here. *Id.* at 1160. Clarke was moving towards the deputies and reached out towards Deputy Magoon even after enduring six types of non-lethal uses of force and after he had five or six rounds fired at him. A reasonable officer could reasonably believe Clarke posed some risk to the lives of the deputies.

As a result, Plaintiff has failed to establish a broad, clearly established principle that gave the deputies fair warning their actions were unconstitutional.

(c) <u>Obvious Clarity</u>

Plaintiff lastly argues that "the deputies' conduct was so obviously unconstitutional that prior case law was unnecessary." (Doc. 58 at 12). Under the narrow "obvious clarity" exception, courts look "to the officer's conduct and inquires whether that conduct lies so obviously at the very core of what the Fourth Amendment prohibits that the unlawfulness of the conduct was readily

apparent to [the officer], notwithstanding the lack of fact-specific case law." *Helm*, 989 F.3d at 1276 (alteration in original) (internal quotation marks omitted) (quoting *Fils*, 647 F.3d at 1291).

This case, however, does not fall under the obvious clarity exception. The deputies gradually increased the use of force because Clarke was not subdued, was actively resisting arrest, and had disobeyed at least 60 commands. None of the force used by Deputies Stender and Magoon, though it resulted in Clarke's death, was so patently excessive that "no reasonable officer could have believed that [his] actions were legal." *Lee v. Ferraro*, 284 F.3d 1188, 1199 (11th Cir. 2002).

Since Plaintiff failed to show that Deputies Stender and Magoon violated a clearly established right at the time of the alleged violation, they are entitled to qualified immunity. Accordingly, Count I is dismissed with prejudice.

**B. Count II**

In Count II (Doc. 49 ¶¶ 116–33), Plaintiff alleges Deputy Palmer violated the Fourth Amendment by failing to intervene in Deputy Magoon's excessive use of force. The Court need not detail the allegations as without any underlying excessive force claim, there is no requirement to intervene.

"The principle that an officer must intervene when he or she witnesses unconstitutional force has been clearly established in this Circuit for decades." *Helm*, 989 F.3d at 1272. "[A]n officer who is present at the scene and fails to

take reasonable steps to protect the victim of another officer's use of excessive force[] can be held liable for his nonfeasance." *Nute v. White*, 152 F.4th 1311, 1319 (11th Cir. 2025) (quoting *Velazquez v. City of Hialeah*, 484 F.3d 1340. 1341 (11th Cir. 2007)).

Since neither Deputy Magoon's nor Deputy Stender's use of force was excessive force, Deputy Palmer had no obligation to intervene. *See Williams v. Radford*, 64 F.4th 1185, 1199 (11th Cir. 2023) ("Of course, a failure-to-intervene claim requires an underlying constitutional violation."); *Sebastian v. Ortiz*, 918 F.3d 1301, 1312 (11th Cir. 2019) ("Plainly, an officer cannot be liable for failing to stop or intervene when there was no constitutional violation being committed."); *Crenshaw*, 556 F.3d at 1294 (finding no obligation to intervene if the other officer's force is not excessive). As a result, the Court dismisses Count II with prejudice.

**C. Count III**

Plaintiff alleges Deputies Stender, Magoon, and Palmer violated Clarke's Fourteenth Amendment Equal Protection right to be free from discriminatory intent when he was "treated differently than other similarly situated white individuals[.]" (Doc. 49 ¶¶ 138–43). More specifically, Deputies Stender, Magoon, and Palmer were motivated by Clarke's race, political

beliefs,[8] and mental health condition to escalate the use of force against Clarke, which ultimately resulted in Clarke's death. (*Id.* ¶¶ 140, 142). Defendants, however, argue that Plaintiff has again failed to allege a similarly situated individual who was treated differently. (Doc. 52 at 21–22). The Court agrees with Defendants.

The Equal Protection Clause of the Fourteenth Amendment provides that no state shall "deny to any person within its jurisdiction the equal protection of the laws." U.S. Const. amend. XIV, § 1, cl. 4. This is "essentially a direction that all persons similarly situated should be treated alike," and "simply keeps governmental decisionmakers from treating differently persons who are in all relevant respects alike." *Adams ex rel. Kasper v. Sch. Bd. of St. Johns Cnty.*, 57 F.4th 791, 800–01 (11th Cir. 2022) (citations omitted). In short, "[t]he Equal Protection Clause requires that the government treat similarly situated persons in a similar manner." *Gary v. City of Warner Robins*, 311 F.3d 1334, 1337 (11th Cir. 2002). To prevail on an equal protection claim, a plaintiff must show that they were treated differently from other similarly situated individuals. "[D]ifferent treatment of dissimilarly situated persons does not violate the equal protection clause." *E&T Realty v. Strickland*, 830 F.2d 1107, 1109 (11th Cir. 1987).

[8] Clarke is a sovereign citizen. A sovereign citizen is an individual who believes they are not subject to government authority. *See Gravatt v. United States*, 100 Fed. Cl. 279, 282 (2011).

As the Court noted, conclusory statements are insufficient to show a similarly situated individual was treated differently than Clarke, and this remains the case. *See Clarke*, 2026 WL 874145, at *22; *see also McCants v. City of Mobile*, 752 F. App'x 744, 749 (11th Cir. 2018) (dismissing an equal protection claim against a police officer where plaintiff failed to allege that a white driver was not asked for their license and insurance or any other similarly situated individual). Plaintiff only alleges that "Clarke was treated differently than other similarly situated white civilians because of his race and political beliefs." (Doc. 49 ¶¶ 111, 139). Without anything more, Plaintiff has failed to plausibly state an equal protection claim, and the Court dismisses Count III with prejudice.

**D. Count IV**

Sheriff Prummell argues that the Second Amended Complaint fails to state a claim under *Monell* because: (1) there was no underlying constitutional violation; (2) Plaintiff failed to allege sufficient facts to establish a practice of repeated constitutional violations to impose liability; and (3) the Second Amended Complaint only offers Clarke's own experience. (Doc. 52 at 22–24).

A municipality cannot be held vicariously liable for the constitutional violations of its employees. *See Monell v. Dep't of Soc. Servs.*, 436 U.S. 658, 691 (1978). The government as an entity may be responsible, however, "when execution of a government's policy or custom, whether made by its lawmakers

or by those whose edicts or acts may fairly be said to represent official policy, inflicts the injury." *See id.* at 694. To impose such liability, a plaintiff must show that: (1) his constitutional rights were violated; (2) the municipality had a custom or policy that constituted deliberate indifference to that constitutional right; and (3) the policy or custom caused the violation. *See Underwood v. City of Bessemer*, 11 F.4th 1317, 1333 (11th Cir. 2021) (quoting *McDowell v. Brown*, 392 F.3d 1283, 1289 (11th Cir. 2004)).

Here, as discussed above, none of the deputies inflicted any constitutional harm. Accordingly, Sheriff Prummell, in his official capacity as Sheriff, cannot be held liable under *Monell*. "*Monell* and its progeny do not 'authorize[] the award of damages against a municipal [entity] based on the actions of one of its officers when in fact . . . the officer inflicted no constitutional harm.'" *See Andre v. Clayton Cnty.*, 148 F.4th 1282, 1298 (11th Cir. 2025). Accordingly, the Court dismisses Count IV with prejudice.

**E. Count V**

Finally, Sheriff Prummell argues Count V must be dismissed because Deputies Stender and Magoon's use of force was objectively reasonable, Deputies Stender and Magoon acted within the course and scope of their

employment, and because there is no general duty to train or supervise deputies in any particular way. (Doc. 52 at 24–25).

Florida's Wrongful Death Act allows for recovery when the death of a person is caused by negligence or a "wrongful act," which includes the use of excessive force by a police officer. Fla. Stat. § 768.19 (2026). Plaintiff alleges three wrongful acts: (1) battery; (2) negligent hiring; and (3) failure to train. (Doc. 49 ¶¶ 169–91). Each wrongful act, however, requires an underlying tortious action by the deputies. *See City of Miami v. Sanders*, 672 So. 2d 46, 48 (Fla. Dist. Ct. App. 1996) (analyzing a police officer's use of force under the reasonableness standard in determining whether the officer committed battery); *Tallahassee Furniture Co., Inc. v. Harrison*, 583 So. 2d 744, 750 (Fla. Dist. Ct. App. 1991) (requiring an employee to commit a willful tort before liability can attach for negligent hiring); *cf. Acts Ret. Life Cmtys. Inc. v. Est. of Zimmer*, 206 So. 3d 112, 115 (Fla. Dist. Ct. App. 2016) (stating that the underlying action of an employee must itself be a tort for liability to attach in failure to train); *Winters v. Ranum*, 730 F. App'x 826, 830–31 (11th Cir. 2018) (stating that where an officer used reasonable force in an arrest there is no negligent training claim).

Since neither Deputy Stender nor Deputy Magoon committed any underlying wrongful act—as detailed in the above counts—all of Plaintiff's

theories fail to state a claim. Accordingly, the Court dismisses Count V with prejudice.

Accordingly, it is now

**ORDERED:**

1. Defendants' Motion to Dismiss (Doc. 52) is **GRANTED.**
2. The Second Amended Complaint is **DISMISSED with prejudice.**
3. The Clerk is **DIRECTED** to enter judgment in Defendants' favor, deny all pending motions as moot, terminate all deadlines, and close the case.

**DONE AND ORDERED** in Fort Myers, Florida, on September 4, 2026.

SHERI POLSTER CHAPPELL
UNITED STATES DISTRICT JUDGE

Copies: Parties of record